dash one zero eight IN RE LUTZ BIEDERMANN Now, tell me how to say your name, sir. My name, good morning. And may it please the court, my name is Luke Deschaux. Deschaux. Okay, Mr. Deschaux, you may proceed when you're ready. Let me just get my... All right, well, may it please the court, whether by serendipity or design, we are in a slightly different situation than the case, two hearings before you. We are here just to use your words, Judge Moore, asking for the moon and not necessarily the stars, in that we submit that the board in this case erred in affirming the examiner's rejection based on a new ground, therefore denying Mr. Biedermann due process. You did find the Latham case, as opposed to previous counsel, and found some comfort there, did you not? We did, Your Honor, and we draw quite a bit of comfort from that case, and importantly, what the case instructs is that when we have the board taking a position that its expansion of what the examiner found constitutes gap-filling, that case instructs us that we need to be gap-filling, if you will, freedom is rather nearly defined, precisely because if it goes too far, you do impinge on due process grounds. All right, Mr. Deschaux, I don't disagree that procedural protections are important and that we need to be careful to safeguard them. Having said that, sometimes when someone simply argues the burden of proof, and that's all, that's when you know that it's because they're ultimately going to lose, and so my question is, I was surprised that your gray brief did not respond in a little bit more detail about what it is you're going to show if, in fact, we send it back, that would indicate that this is not obvious. Sure. Well, a couple of points there, Your Honor, and I did note a suggestion on the part of the director that there is some harmless error rule at work here, and it most definitely does not, it's not at work, because in order to decide whether or not the error is harmless, one needs to consult the record that is really, if you will, that is incomplete because of the error. So by definition, it can't be harmless error. Second point, Your Honor, we do, in the gray brief, dedicate roughly, what, two, three pages on the question of how the record would have been supplemented had the director or had the board done what it should have done, which is, in this case, determine that there's a new ground, and then give the appellant, the petitioner, the option of either having the entire examination reopen and going back before the examiner, or get a rehearing in full with the opportunity to present new evidence. Because my recollection of the discussion might be vague, but, because I thought the discussion was pretty vague, so maybe you could be a little more specific? Sure. And I'll respond, Your Honor, although I do want to focus the Court's attention on the board. I mean, the examiner, on the one hand, we have absolutely agnostic to the types of threads you have in control, concluding that if you combine Steinbach, you're going to get a more efficient or a most efficient thread in place, and ergo, boom, there you have obviousness. We have the board, on the other hand, that quite to the contrary... Okay. You're way off from Judge Amaya's question, but I really want to ask you something about that. Do you mind if I... No, it's okay. I mean, I still haven't gotten an answer. I know. You have not. But I... So, this is... What does it mean for efficient load transfer? That's the rationale the examiner did give, and I spent quite a bit of time trying to figure out what that meant, and in particular, I'll let you know, trying to figure out whether reducing splay would be improving the efficiency of the load transfer. So why don't you tell me, from a technical standpoint, exactly what you think the examiner meant when he used that term? Sure. Well, the short answer is it's unclear what the examiner meant. On the other hand, we know what the examiner did not mean, and what the examiner did not mean was that efficiency went to reducing splay. How do we know that? We know that on three grounds. Number one, if you read Cattrell, Your Honor, column two, line 54, it notes that a saw-tooth thread will eliminate, completely eliminate, radial forces that will cause splay. All right? Now, given that reference, why on earth would you use a square thread for the purpose of improving on that, making it most efficient? I mean, elimination is about as efficient as you can get. So point number one. Point number two, we know the examiner didn't consider the Cattrell flat thread because on appeal to the board, the examiner specifically referenced figure three of Cattrell, which in fact discloses a V-thread, not the saw-tooth thread. And in all of this, I think it's very important to remember that Cattrell itself does not instruct that you have to use the saw-tooth to prevent splaying. In fact, Cattrell, if you read the reference in its entirety, is quite agnostic as the type of thread you use. And it just so happens that at column two, line 54 through 58, there is a brief discussion about, hey, if you use a saw-tooth thread, and by the way, that reference says can't, doesn't say must, and it doesn't even say it's preferred. It just notes, if you use a saw-tooth, which you can do, you're going to get the added advantage of reducing splaying. So on that ground, Your Honor, I mean, it's just crystal clear that when we look at Cattrell and we look at what the examiner did, the examiner was simply not thinking anti-splay when it used the Steinbach most efficient reference. We also know that from the appellate brief for another reason, that it's at 580 of the joint appendix, when the examiner refers to what the Steinbach reference teaches in terms of threads, it's the last line, joint appendix 580, the examiner clumps all of the threads together. She notes Steinbach points to V-threads, Acme threads, buttress threads, and square threads, which again shows that this examiner was absolutely, from her reasoning standpoint, agnostic to the question of the kind of thread you have, agnostic. It didn't matter to the examiner. From the examiner's perspective, a thread is a thread is a thread. There are a limited number of threads you can use. We have the Steinbach reference that tells you that the square thread is most efficient for translational purposes when you're dealing with heavy machinery, ergo, you'd be motivated to use that thread in place of the Cattrell thread, whatever the Cattrell thread is, because the examiner doesn't tell us what the Cattrell thread is. Your Honor, to Judge O'Malley's point on obviousness, first, we have the question of, the fundamental obviousness question, which we are not asking this Court to decide, is would it have been obvious to substitute the Cattrell thread for the square thread in Steinbach? The answer to that is no, it would not have been obvious. One reading Steinbach has expressly taught that the square thread is difficult to manufacture in comparison to other threads. Now, I am aware of the Board's point that, look, manufacturing, that's inherent, et cetera, et cetera. Well, we beg to differ. We're not claiming a flat thread. What we are claiming is a flat thread in the context of this particular receiving device, a receiving device which is different in two fundamental respects from what we have in Steinbach. Number one, the receiving device is tiny, so when you're manufacturing, you're dealing with very tiny tolerances, and so the relative ease of manufacturing square threads versus different threads may shift in that respect. Number two, if you look at the device, Your Honor, we're dealing with an incomplete thread, an incomplete thread, because you need it, if you think about it, you have the device, it has two openings to accommodate the rod that flips in, and so when you're looking at the inner radius of this device, you're talking about a thread that's incomplete. Steinbach doesn't have that either, and so... Mr. Dishon, pardon me for interrupting, but the thrust of your argument is that the Board made a new ground of rejection and you were foreclosed from the opportunity to present a proper argument on that new ground. Correct. But yet you're arguing distinctions that would apply even if splaying was not specifically set forth as an issue. You're arguing why the combination of these two references would not be obvious. Is this the same arguments you would have made before? And this... So in what respect have you been foreclosed from making any arguments by the fact that the Board made explicit some reference to splaying when the examiner simply said efficiency and load transfer? Well, when the examiner said efficiency and load transfer, we know that the examiner was not talking about anti-splaying. We know... But what difference does that make when you're not... even in your gray brief, as I read it, you're saying, you know, here are the things we could have argued had we had the same thing to do with splaying, as I read it. I'm sorry, I cut you off, Your Honor, I didn't mean to. They do. They do. And it goes right to the motivation to combine. I mean, it's all about ease of manufacturing, difficulty of manufacturing. The issue is motivation to combine, motivation to shift gears and not use the sawtooth. And that's the heart of the issue. Why reading Cottrell would you be motivated to use something other than what Cottrell discloses, which is figure three, a regular thread, V-thread, if you will, and the reference to the sawtooth. Why reading that would you be motivated to use the square thread in Steinbach? And if splaying, from Biedermann's perspective, splaying is a key factor. And what Biedermann proposes is that in order to accomplish the same anti-splaying, okay, and get the additional benefits of the machining and the precision, you're going to go... You're going to go to Steinbach. Mr. Daschle... And you're going to use the square thread. You're into your rebuttal time. Do you want to say what's left? I do, Your Honor. Ms. Lateef? Am I saying that right? Lateef? Yes. Good morning, Your Honor. May it please the Court. The Board did not issue new ground of rejection in this case. And as Judge Wynn pointed out, appellants were not proposed for making any arguments based on the Board's rejection. In order to understand what the Board and the examiner did, it's important to sort of understand what the prior art is teaching. In this case, there's been no challenge to the fact that Cottrell discloses all the limitations of Biedermann's claimed invention, with the exception of the square thread form. And then when you look to Steinbach, it teaches that square thread forms are known in the art, and that square and buttressed threads are translation threads, but that square threads are more efficient for load transfer. This is a simple case of replacing one thread form for another with expected results. And you have the examiner and the Board basically finding that the motivation to combine these two references is based on how load is distributed down the axis. But there has to be an explanation for how the Board finds the motivation to combine. And the Board concedes that the examiner's explanation was either vague or wrong. I mean, the Board does not adopt the examiner's basis for finding that motivation. Isn't that right? Well, I would disagree with that, Your Honor. The Board didn't concede that the examiner's explanation was vague or wrong. What the Board said was that it was limited in how it explained it, basically saying it gave sort of a shorthand notion of what it's talking about. They're both talking about how load is transferred down the axis as opposed to away from the axis and radially. If you're looking at the bone screw and you have the lock, the axis is like this. And they're talking about securing the rod that's in place. And you want the load to be along the axis to keep it in place. And if you start to go radially, you'll start to go towards the legs and it will cause the holding portion to splay. The examiner says, characterizes that as efficient load transfer, which is a shorthand way of saying maximum axial load, because you want it to be efficient. Otherwise, the force gets wasted, it goes towards the legs, they start to splay, and then the rod is no longer secure. I just want to be clear about one thing that is a little bit tangential. Sure. You're equating efficient load transfer to how the load is transferred down the axis. Okay. That may or may not be correct. But how does that have anything to do with machinability or interchangeability? The board seems to have articulated a number of bases that would motivate one of skill and the art to make the combination, one of which is the machinability of the parts. I can't see anything in the words efficient load transfer that if this were rejection, were based exclusively on machinability of the parts, how could we not conclude that was a new ground of rejection? And so the board clearly says that. Do you have a response? I mean, if say that were the only bases for the motivation, machinability of the parts, which is clearly one of the bases the board uses, would it be a new ground of rejection or are you going to somehow shoehorn machinability into efficient load transfer? Well, my response to that, Erin, would be that the board isn't using that as a basis for motivation to combine the references. They're responding to arguments that Biderman's making about the fact that a person looking at the primary reference control wouldn't look to Steinbach for the square thread. They made this argument in their appeal brief and then the board was responding saying, well, that's not necessarily true. Steinbach lists several thread forms and talks about the advantages and disadvantages of each. And so the board is basically trying to respond to that argument and say they would look to this particular square thread because a square thread has more efficient load transfer. Why isn't that a different reason that the board would make the combination? The board is saying, no, no, no, this combination would still occur because of the machinability of these parts. That seems to me, I don't see how I can shoehorn that into efficient load transfer. Whether it's responding to the applicant's arguments or not, it seems to me to be something the board is relying upon to justify making the combination, which to me goes to the motivation to combine. Right. What I would say is that the board is not relying upon that to make the rejection. The board is relying upon the fact that the motivation to combine has to do with the elimination of the radial component of the load on screw, which is another way of saying you have a more efficient load transfer. The board brings up the machinability issue because they're responding to an argument that appellant made about the fact that no one would look to that reference. If the appellant didn't make that argument, the board would never turn to machinability. The board would continue to talk about the fact that you're looking to eliminate the radial load. I'm going to read to you from the board's decision because I'm not sure that I'm willing to agree with your characterization of how the board used machinability. Sure. JA5. Thank you. Right in the middle, the examiner's discussion as to the benefits that can be realized from improved efficiency is limited. However, this characteristic appears to be just one of several factors, including machinability, that one of skill in the art would consider when selecting an appropriate thread form. It's hard for me to look at that and not say that... I mean, the board's saying there are several factors that would inform one of skill in the art as to why they would choose a particular thread form. That's the motivation to make the very combination at issue. It seems to me the board's just clearly saying there are several factors. Machinability is one of them. It's not just efficiency. Your Honor, if I can direct you to JA550, which is appellant's argument and kind of leads through to JA552. But in that paragraph that you just read of the board's opinion, they are basically responding to appellant's argument about how square threads wouldn't be used... I'm sorry if I can... Basically, how a person with skill in the art would be discouraged from using square threads. And so then what the board is saying in that paragraph that you just read, they're basically saying there are additional benefits to this improved efficiency argument, and that improved efficiency is one factor. And it's not improper for the board to make this additional finding, but it's not relying on a new fact or a new rationale. It's not changing its rejection originally about basically making this rejection based on elimination of the radial load upon screwing. Because the paragraph right before it, it's telling you what it's... If we could go back to JA5, I'm sorry to make you keep changing, but if you look right before that, it talks about, thus, one of ordinary skill in the art would have a reasonable expectation that a square thread form, which like the Buster's thread, is also typically used for function in a manner similar to a sawtooth thread... I'm sorry, a sawtooth or butcher's thread to eliminate the radial component of a load on screwing, thereby discouraging spreading of Couttrell's Flames, Forest Flame. That's the motivation to combine. It then continues on to address the arguments that Appellant was making when it then talks about, okay, there might be other things. No one would be discouraged from looking at this square thread to put into the Couttrell reference. And I'd like to address this notion that the examiner and the board had different findings because the board... I'm sorry, the examiner called the thread form in Couttrell a V-thread. The examiner, there's no question that the examiner understood that the Couttrell reference is, excuse me, discourages splay. And that's because when the Couttrell reference says so in it, and also in the specification that Biedermann supplies, Biedermann also states that Couttrell teaches that the reference discourages splay. Whether the examiner thought that a V-thread discouraged splay or not, we don't know. We have Biedermann saying that everybody knows a V-thread doesn't discourage splay. But the examiner never said that. The examiner can call it a V-thread and the examiner can think that that discourages splay. If you look at a V-thread and you look at a Sawtooth thread, they look very similar because there's two cross sections in the thread. So that's not an indication that the examiner had a different reading of the prior art than the board did. I don't know if there's any other questions. Okay. I don't think so. Thank you. Thank you, Mr. Teague. Can I ask you to start at the last point? Wasn't there a concession that was made before the board that, in fact, that the Sawtooth threads are the same as buttress threads? The short answer to that is no. It actually fell far from the concession, Your Honor. I think the argument was at 7.07 of the record. But what Mr. Garcia said in response to the board that at some point, a Sawtooth thread may have been or could have been considered a buttress. The point being is that it's hardly what we call an unequivocal statement, point number one. Point number two, notice is required before the hearing, not during the hearing. And so Mr. Garcia responding to questions and the research he may have done between the time that the examiner issued the rejection and the time that the hearing took place is with all due respect to the counsel's argument, neither here nor there. I mean, the question is, did the examiner put Mr. Biederman's counsel on notice that the anti-splay motivation was in play? And the answer to that is unequivocally no. It is just not there. The board recognized that what the examiner had done in the rejection fell far short of the type of explanation that would really be required to support an obvious misfinding. Do you agree with Ms. Lateef that efficient load transfer is a measure of how load is transferred down the axis and that the greater the radial deviation, the less efficient the load transfer is going to be? Well, I certainly agree with that conceptually. But here's the point. When the examiner is using, what the examiner said was, Steinbach says most efficient for load transfer. It's clear in a number of respects that Steinbach is not talking about the avoidance of radial forces and what that could possibly cause. I mean, first of all, you're dealing with heavy machinery where splaying of the types of arms we're dealing with wouldn't factor into it. But what's important here is if we read Steinbach and we read the grouping of these threads, the ACME thread is included among them. Steinbach groups as very good translational threads ACME, buttress, and the square thread. The ACME thread is a trapezoidal thread with angles that are flanked. And that's in the machinery's handbook that is part of the record. Did Steinbach ever mention radial force or splay or anything like that? No, Your Honor, no. No mention of that. And back to Your Honor's question, I mean, what would have happened in a hypothetical but-for world where the examiner puts Mr. Biederman on notice that this is being rejected because Steinbach would cause you to, or would cause one to switch from the sawtooth to the square thread in order to maintain the splaying and get additional efficiency. Let's create this but-for world. Well, at that point what we have is basically a question as to whether or not Steinbach offers that motivation. Steinbach, which is completely silent on the splaying issue, completely silent. Steinbach, which in fact teaches away from using the square thread on the basis that it's tougher than machine and notes that the only advantage you get by using the square thread, if I can read it, is that it's load-bearing in both directions. I mean, that's where the square thread is noted. Namely that you can, in terms of translational capabilities, the square thread offers you the ability of going up and down. Well, the fact of the matter is that when you're dealing with a spinal screw, a receiver, you don't need to go up and down. The surgeon's going to tie it down and that's it. Whether or not you have it back and forth doesn't play into it. And there are a number of other reasons pointed out in the gray brief, Your Honor, the last three pages, where we just outline where we could have dealt with this obvious misrejection head-on through affidavits, declarations, to deal with that issue. I think we have your argument, Mr. Daschle. I thank both counsel for their arguments. The case is taken under submission. I conclude our proceeding.